UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
                                     :     No. 3:18-CR-48-VAB

UNITED STATES OF AMERICA    :

                                     :

            v.                :

                                     :

LESLIE R. EVANS,             :

                                     :

                   Defendant.   :     November 30, 2018
---------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER THE TRIAL OF THE DEFENDANT LESLIE R. EVANS FROM THE TRIALS OF DEFENDANTS ROBERT V. MATTHEWS AND MARIA MATTHEWS BY DEFENDANT LESLIE R. EVANS**

Defendant Leslie R. Evans deserves a full and fair opportunity to defend himself against the charges against him. Currently, he is indicted with defendants Robert V. Matthews and his wife, Maria Matthews. *See* Superseding Indictment (Aug. 30, 2018) (ECF 39). Prior to the filing of the Indictment, Mr. Matthews testified before the Securities and Exchange Commission in its enforcement action, and neither Mr. Evans nor his attorney was present. In that testimony, Mr. Matthews provided exculpatory testimony about Mr. Evans's conduct in relation to the subject of the Superseding Indictment.

At trial, Mr. Matthews enjoys an absolute right not to testify under the Fifth Amendment of the United States Constitution. Prior to a joint trial, there is no way for Mr. Evans to know whether Mr. Matthews will exercise that right. It is well settled in the Second Circuit that the need to introduce the exculpatory testimony of a co-defendant would, if the proper showing is made, constitute a basis for

severance. *United States* v. *Finkelstein*, 526 F.2d 517 (2d Cir. 1975). Here, Mr. Evans will be able to make that showing under the four-factor *Finkelstein* test. He will also be able to show that Mr. Matthews's testimony would be admissible at trial, which is a fifth consideration under *Finkelstein*.

Furthermore, even if the Court were to decide that Mr. Evans failed to make the requisite showing under *Finkelstein*, it should still grant the motion to sever because a joint trial would run afoul of the Supreme Court's holdings in *Bruton* v. *United States*, 391 U.S. 123 (1968), and *Crawford* v. *Washington*, 541 U.S. 36 (2004). Because Mr. Matthews made testimonial statements, and Mr. Evans was not present to cross-examine him, introduction of those statements against Mr. Evans would violate Mr. Evans's Sixth Amendment right to confront the witnesses against him. Further, were the government to introduce such evidence only against Mr. Matthews, Mr. Evans would also be prejudiced as set forth in *Bruton*. Therefore, this Court should sever the trials pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure.

## I.   Background.

### A.   The Superseding Indictment.

In March 2018, a grand jury indicted Messrs. Matthews and Evans. Indictment (Mar. 14, 2018) (ECF 1). On August 30, 2018, the government superseded its indictment, adding some additional charges against Mr. Matthews, adding no charges against Mr. Evans, and adding charges against Mrs. Matthews for the first time. Superseding Indictment (ECF 39).

The Superseding Indictment alleges that Messrs. Matthews and Evans, together with others, engaged in a scheme to defraud investors in the Palm House Hotel development project, which was to take place in Palm Beach, Florida. *Id.* ¶¶ 15–16. It alleges that certain investors in the EB-5 visa program were materially misled about the purpose for their investments, which they were told would be for the development of the Palm House Hotel. *Id.* ¶ 17. It alleges that in fact, the monies invested through the EB-5 program were instead converted to the personal use of Mr. Matthews and others. *Id.* ¶ 18. It contends that to execute this scheme, Messrs. Matthews and Evans, together with others, executed certain wire transfers to various accounts under their and others' respective control. *Id.* ¶ 20. One of the accounts used for various wires, according to the Superseding Indictment, was Mr. Evans's clients' trust account, known as his IOTA Account. *Id.* ¶ 19.

The Superseding Indictment also alleges that some of the EB-5 investors' funds were used by Mr. Matthews to purchase a home in Connecticut out of foreclosure, during which he and others misrepresented material information to the foreclosing bank. *Id.* ¶¶ 27–31. As part of that count, the Superseding Indictment alleges that Mr. Evans "falsely and fraudulently represented to Auction.com that [alleged co-conspirator Nicholas] Laudano and his company NJL Development Group, LLC had provided $2,750,000 to EVANS, from which the down payment for the property [at issue] would be drawn." *Id.* ¶ 36. It further alleges that at no point did Laudano or NJL Development Group provide Evans with such funds and that

"the down payment for the property came from comingled funds in the EVANS IOTA Account." *Id.*

It also alleges that Mr. and Mrs. Matthews evaded taxes through the use of various corporate entities and accounts. *Id.* ¶¶ 51–53.

Counts One through Eight of the Superseding Indictment charge Messrs. Matthews and Evans with wire fraud, in violation of 18 U.S.C. § 1343. Count Nine charges them with bank fraud, in violation of 18 U.S.C. § 1344. Count Ten charges them with conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 1349. Counts Eleven and Thirteen through Sixteen charge Mr. Matthews with illegal monetary transactions using wire fraud proceeds, in violation of 18 U.S.C. § 1957; Count Twelve charges Messrs. Matthews and Evans both with the same offense. Counts Seventeen through Twenty charge Mr. Matthews with illegal monetary transactions using bank fraud proceeds, in violation of 18 U.S.C. § 1957. Count Twenty-One charges Mr. and Mrs. Matthews with tax evasion, in violation of 26 U.S.C. § 7201.

**B.     The  SEC investigation.**

In addition to the United States Attorney's Office, the SEC had been conducting its own investigation into the same alleged conduct. During the course of its investigation, it deposed Mr. Matthews. On each of January 31, 2017, and February 13, 2017, Mr. Matthews provided sworn testimony to the SEC. During the course of those depositions, no one other than the SEC, Mr. Matthews, and Mr. Matthews's attorney were present. *See* Tr. of Testimony of Robert V. Matthews

(Jan. 31, 2017) ("Jan. SEC Tr."); Tr. of Testimony of Robert V. Matthews (Feb. 13, 2017) ("Feb. SEC Tr.").

During those depositions, Mr. Matthews testified about the role Mr. Evans played in disbursing some of the funds that were allegedly raised from EB-5 investors and his involvement in the Palm House Hotel development. *See, e.g.*, Jan. SEC Tr. at 132; Feb. SEC Tr. at 565, 706. The general tenor of Mr. Matthews's testimony was that Mr. Evans acted at the direction of Mr. Matthews or others and not of his own volition or knowledge.

## II.  Argument.

Severance of a defendant's trial is appropriate when "there is a serious risk that a joint trial would compromise a specific trial right" possessed by the defendant. *Zafiro* v. *United States*, 506 U.S. 534, 537–38 (1993). Such a risk of prejudice exists when "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* at 539 (citing *Tifford* v. *Wainwright*, 588 F.2d 954 (5th Cir. 1979)). Furthermore, the introduction of evidence against one defendant in violation of the Confrontation Clause rights of a co-defendant might justify separate trials. *See Bruton*, 391 U.S. at 131. Fortunately, Rule 14(a) provides the Court a mechanism to avoid these prejudices against a defendant by authorizing it to sever his trial from that of his co-defendants. Fed. R. Crim. P. 14(a) ("If the joinder of. . . defendants in an indictment . . . for trial appears to prejudice a defendant . . . the court may . . . sever the defendants' trials.").

A.      The *Finkelstein* factors weigh in favor of severance.

In *Finkelstein*, the Second Circuit expressly recognized that the availability of exculpatory testimony of a co-defendant might form the basis for severance under Rule 14(a). *See Finkelstein*, 526 F.2d at 523–24. That opinion set forth four factors that the Court should consider in determining whether to grant severance:

1.      The sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege;

2.      The degree to which the exculpatory testimony would be cumulative;

3.      The counter arguments of judicial economy; and,

4.      The likelihood that the testimony would be subject to substantial, damaging impeachment.

*See id.* These factors are not exhaustive, and courts often also consider whether the proposed testimony would be admissible at the severed trial. *See United States* v. *Ferguson*, 676 F.3d 260, 287 (2d Cir. 2011).

Here, Mr. Evans's inability to secure Mr. Matthews's testimony would compromise his right to present a defense that he acted in good faith because he believed his actions were lawful. *See United States* v. *Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) ("[S]ince [good faith] may only be inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such testimony clearly outweigh [its relevance]."); *see also United States* v. *Collarafi*, 876 F.2d 303, 305 (2d Cir. 1989) (same). The fundamental fairness of allowing Mr. Evans to present this defense to the jury strongly supports the severance of his trial from that of his co-defendants.

### 1.    At a separate trial, Mr. Matthews would likely testify.

The first *Finkelstein* factor considers the likelihood that a co-defendant would waive his Fifth Amendment privilege and testify at a severed trial. *Finkelstein*, 526 F.2d at 523. For purposes of this factor, "the law does not require guarantees, only a showing of willingness on the part of the defendant to testify at a separate trial of his codefendant." *United States* v. *Stella*, No. 90 Cr. 95 (CSH), 1990 WL 128918, at *7 (S.D.N.Y. Aug. 27, 1990).

At a joint trial, any testimony Mr. Matthews were to give could be used against him, and he has an absolute Fifth Amendment right not to testify. But, if the trials were severed, such that the trial of the Matthewses were to be held first, Mr. Matthews would have no choice but to testify if Mr. Evans subpoenaed him at his own, subsequent trial. After all, at his own trial Mr. Matthews either will be acquitted, after which he will be protected from self-incrimination by the Double Jeopardy Clause, or will be convicted, such that his Fifth Amendment right would no longer matter. *See United States* v. *Yildiz*, 85 Fed. App'x 239, 241 (2d Cir. 2004) ("[S]entenced co-defendants are generally not subject to further incrimination with respect to the crime for which they are serving their sentence and thus cannot invoke the Fifth Amendment." (citing *Mitchell* v. *United States*, 526 U.S. 314, 326 (1999))).

*United States* v. *Gilbert*, 504 F. Supp. 565 (S.D.N.Y. 1980), is analogous to this matter. In *Gilbert*, three defendants were charged with conspiracy to violate the securities laws. *Id.* at 565. Two of the three defendants sought to sever their trials from the third defendant. *Id.* Both defendants based their request for

severance on a desire to submit exculpatory testimony from their co-defendant, an opportunity, they contended, that would be foreclosed to them at a joint trial. *Id.* at 566. In granting severance, the court relied on *Finkelstein*, noting that "the resolution of the co-defendant's severed trial might eliminate the basis for any subsequent assertion of the Fifth Amendment privilege." *Id.* at 572 (citing *Finkelstein*, 526 F.2d at 525). The court further noted "'that there is a substantially greater likelihood' of the co-defendant's evidence being available if the trials are severed, even if the motion does not establish that availability to a certainty." *Id.* at 572 (quoting *United States* v. *Gleason*, 259 F. Supp. 282, 285 (S.D.N.Y. 1966)). Having severed the trial of the two moving defendants, the court held that it "require[d] no further analysis to demonstrate that" the third defendant "should be tried alone, and first in time." *Id.* at 573.

The same reasoning applies here. If the Court severs the trials of the Matthewses from the trial of Mr. Evans, there is a "greater likelihood" that Mr. Matthews's evidence will be "available" for Mr. Evans. *Id.* at 572 (internal quotation marks and citation omitted). While that availability is not "a certainty," *id.*, it would be available. That consideration militates in favor of severing the trials and trying the Matthewses first.

### 2. Mr. Matthews's exculpatory testimony would not be cumulative.

The second *Finkelstein* factor focuses on whether the testimony from the co-defendant would be cumulative. Here, it would not be.

Mr. Matthews is in a unique position to testify about how and why Mr. Evans sent the wires to the entities he sent them to. There are a number of emails from Mr. Matthews to Mr. Evans, directing him to send wires to various other parties. Those emails do not contain any information about the purpose of the wires. Mr. Matthews is in the unique position to explain to the jury why he asked Mr. Evans to send the wires, why he directed them where he did, and what (if any) explanation he provided to Mr. Evans when making the request. Furthermore, because the Superseding Indictment alleges that the monies allegedly converted from the Palm House Hotel project were diverted for the personal benefit of the Matthewses, Mr. Matthews is the only person who can testify about the merits of that contention.

While it is true that Mr. Evans might be able to testify about what Matthews told him when ordering these wires, this factor still weighs in favor of severance. As courts have recognized, the testimony of the defendant who is seeking severance "would not be an adequate substitute for the [co-defendant's testimony] because it is much more likely to be attacked as self-serving." *See, e.g., United States* v. *Morelli*, No. S1 04 CR 391 (DAB), 2005 WL 743062, at *4 (S.D.N.Y. Mar. 29, 2005).

### 3. Counter arguments of judicial economy do not preclude severance.

The third prong of the *Finkelstein* analysis requires the Court to balance the risk of prejudice against the goal of preserving limited judicial resources. If the court grants severance, it would require the scheduling of a second, subsequent trial of Mr. Evans, at which the government would present some of the same evidence it would present at a joint trial of the Matthewses. But as the Second Circuit observed

in *Finkelstein*, "duplication of proof is often inevitable in situations meriting separate trials. The counter-argument of judicial economy is, indeed, a serious consideration, but by itself does not foreclose further inquiry." 526 F.2d at 524. Moreover, although the separate trials would involve some duplication of proof, Mr. Evans's trial would surely proceed swiftly because many evidentiary issues would have been resolved during the joint trail that proceeded it.

Here, the potentially exculpatory evidence is essential to the defense; therefore, considerations of judicial economy must not overwhelm the analysis. *United States* v. *Boscia*, 573 F.2d 827, 833 (3d Cir. 1978) ("[N]o defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials."). Simply put, Mr. Evans has the right to mount his defense, and that right should not be sacrificed in the name of judicial economy.

### 4.   Mr. Matthews's anticipated testimony is not likely to be significantly impeached.

Mr. Matthews has not made contradictory statements that would provide fodder for cross-examination and impeachment, which courts generally consider on a motion to sever. *Cf. United States* v. *Leonard*, 817 F. Supp. 286, 298 (E.D.N.Y. 1992) (the co-defendant's anticipated exculpatory testimony "would be subject to damaging impeachment in that such testimony is contradictory to post-arrest statements allegedly made by [the co-defendant]"). In fact, Mr. Matthews's anticipated testimony would be consistent with statements he made in the course of his sworn, SEC testimony, in which he denied any wrongdoing and matter-of-factly

-10-

indicated he (or his designee) directed Mr. Evans to send various wires for legitimate purposes. Courts in this circuit have frequently recognized that such corroborative prior statements by the co-defendant suggest that severance is appropriate. *See, e.g.*, *Gilbert,* 504 F. Supp. at 567. Thus, the fourth *Finkelstein* factor weighs in favor of severance.

### 5.  Mr. Matthews's anticipated testimony would be admissible.

Finally, in addition to the four *Finkelstein* factors, the Second Circuit instructs that in determining whether to grant a motion to sever, the Court should consider whether the proposed testimony would be admissible. *See Ferguson*, 676 F.3d at 287.

Here, the evidence Mr. Evans would elicit from Mr. Matthews is certain to be admissible. Mr. Evans's defense will likely focus on his lack of intent, his lack of motive, and his lack of benefit. Mr. Matthews's testimony would support each of these points: (1) Mr. Matthews will likely testify that Mr. Evans did not intend to defraud the EB-5 investors because he did not know they existed; (2) Mr. Matthews will likely testify that Mr. Evans was not motivated to defraud anyone, but instead to follow the directions, innocently given, by Mr. Matthews; and (3) Mr. Matthews will likely testify that Mr. Evans received no personal benefit from following Mr. Matthews's instructions to send wires where Mr. Evans sent them. All of this testimony would be probative of Mr. Evans's state of mind, which is a crucial element at trial.

Therefore, this inquiry is readily satisfied, and the Court should sever the trials based on the *Finkelstein* factors.

**B.    Securing Mr. Evans's Sixth Amendment rights demands severance.**

Assuming the Court erroneously does not sever the trials based on the *Finkelstein* factors, severance would still be appropriate to preserve Mr. Evans's Confrontation Clause rights.

**1.    Introducing statements from a non-testifying co-defendant is rife with risk.**

**a.    *Bruton* and its progeny prohibit a co-defendant's statement to be introduced against a defendant.**

In *Bruton*, defendants Evans and Bruton were tried jointly for robbery. The prosecution introduced evidence of Evans's confession that he and Bruton committed the charged crime. The trial judge instructed the jury that the confession could only be considered against Evans, but not against Bruton. Both men were convicted and appealed. "The Supreme Court ruled that the introduction of Evans' confession violated Bruton's right to confront the witnesses against him, despite the limiting instruction to the jury; it overruled prior precedent holding that the infringement of the defendant's confrontation right could be avoided by giving a limiting instruction." *United States ex rel. Klimawicze* v. *Sigler*, 559 F. Supp. 2d 906, 913 (N.D. Ill. 2008), *aff'd sub nom. Klimawicze* v. *Trancoso*, 313 Fed. App'x 904 (7th Cir. 2009). In so doing, the Supreme Court noted "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human

limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135–36. It then held that the situation that arose in *Bruton* was such a context.

In 1987, the Supreme Court revisited the solution to a *Bruton* issue in *Richardson* v. *Marsh*, 481 U.S. 200 (1987). There, it held that a defendant's Confrontation Clause rights are not violated when a non-testifying co-defendant's prior confession is admitted against only that defendant with an appropriate limiting instruction not to consider it against the defendant, if "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. Later, in *Gray* v. *Maryland*, 523 U.S. 185 (1998), the Supreme Court honed the rule in *Richardson*. It noted that if the government simply replaced the defendant's name in the non-testifying co-defendant's confession with either "deleted" or a blank space, *Bruton* was still implicated. To come within the *Richardson* rule, the statement must "not refer directly to the defendant himself" and may implicate the defendant "'only when linked with evidence introduced later at trial.'" *Id.* at 195 (quoting *Richardson*, 481 U.S. at 208).

### b. *Crawford* prohibits the introduction of prior testimonial hearsay.

In *Crawford*, the Supreme Court held that a non-testifying declarant's "testimonial" hearsay statements cannot be introduced against a criminal defendant at trial. 541 U.S. at 68. And while such a statement might be admissible for purposes other than for the truth of the statement, *see Tennessee* v. *Street*, 471 U.S. 409, 414 (1985), the Court must be careful not to trample a defendant's Confrontation Clause rights. Deposition testimony is clearly "testimonial" within

-13-

*Crawford*'s rule. *See Crawford*, 541 U.S. at 51–52 (including "depositions" among the "core class of 'testimonial' statements").

> ## 2. The government's efforts to introduce Mr. Matthews's SEC deposition testimony might violate *Bruton* and *Crawford*.

Here, Mr. Matthews testified for two days before the SEC. Neither Mr. Evans nor his lawyer was present for either day's testimony, which means he had no right to cross-examine Mr. Matthews at that time. As noted above, Mr. Matthews has an absolute right not to testify at his trial pursuant to the Fifth Amendment. Therefore, Mr. Evans might have no opportunity to cross-examine Mr. Matthews at a joint trial.

But, pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, Mr. Matthews's SEC deposition testimony is a non-hearsay statement, which the government may introduce against Mr. Matthews at trial. Were he to be tried alone, that would not be a problem. But here, the government is seeking to try him with Mr. Evans. Were Mr. Matthews's prior SEC deposition testimony introduced at the trial, Mr. Evans's Confrontation Clause rights would be violated both because of *Bruton*—if the testimony the government were to seek to introduce included statements about Mr. Evans's conduct—and *Crawford*—if Mr. Matthews does not take the stand.

The government might be able to avoid the *Bruton* problem by redacting the testimony it introduces or by not introducing portions that identify Mr. Evans. *See Richardson*, 481 U.S. at 208; Fed. R. Crim. P. 14(b) ("Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to

-14-

the court for in camera inspection any defendant's statement that the government intends to use as evidence."). But the government cannot avoid the *Crawford* problem by merely redacting what it seeks to introduce. The purpose of introducing any of Mr. Matthews's deposition testimony would undoubtedly be to prove the existence of the charged scheme. That evidence, even if it did not identify Mr. Evans, would surely be inculpatory vis-à-vis Mr. Evans because the government would claim it is proof of the scheme he is charged with being a part of. Furthermore, without having Mr. Matthews on the stand, Mr. Evans will have no opportunity to cross-examine him. As a result, his Confrontation Clause rights would be violated as set forth in *Crawford*.

## III.    Conclusion.

For the foregoing reasons, the defendant respectfully requests that this Court

sever the trials of Mr. Evans from the trials of the other defendants.

Dated: November 30, 2018

<div style="margin-left: 40%;">

Respectfully submitted,

LESLIE R. EVANS


By:  */s/ Daniel E. Wenner*_____
      Stanley A. Twardy, Jr. (ct05096)
      Day Pitney LLP
      One Canterbury Green
      201 Broad Street
      Stamford, CT 06901
      Tel: (203) 977-7300
      Fax: (203) 977-7301
      satwardy@daypitney.com

       — and —

      Daniel E. Wenner (ct27852)
      242 Trumbull Street
      Hartford, Connecticut 06103
      Tel: (860) 275-0100
      Fax: (860) 275-0343
      dwenner@daypitney.com

      His attorneys

</div>

-16-